STEWART, J.
 

 h Steve Hunter, individually and in his official capacity as the Mayor of Richwood, Louisiana, appeals from a judgment dismissing his petition challenging the certification of a recall petition and the scheduling of a recall election for his office. For the following reasons, we affirm the judgment of the district court dismissing the Mayor’s lawsuit.
 

 Hunter was elected the Mayor of Rich-wood on March 8, 2008. In 2009, two registered voters from Richwood filed a recall petition against Hunter. There are 1,068 registered voters within the relevant voting area, and ultimately, 444 persons signed the recall petition. The Ouachita Parish Registrar of Voters examined the petition and, on June 23, 2009, certified
 
 *595
 
 that of the 444 signatories, 373 qualified electors signed the petition. The Registrar forwarded the petition to the Governor, and provided the Mayor with a copy as well. Because the qualified signatories exceeded 33⅜ percent of the qualified voters, the Governor issued a proclamation on July 10, 2009, ordering a special election to be held on Saturday, October 17, 2009, for the recall of Mayor Hunter.
 

 The Registrar received the proclamation from the Secretary of State by fax on July 14, 2009, and via ordinary mail on July 16, 2009. She did not forward a copy of the proclamation to the Mayor. The proclamation was filed with the Clerk of the Ouachita Parish District Court on July 16, 2009; the Clerk did not provide the Mayor with notice of the filing of the proclamation.
 

 |2On September 29, 2009, Mayor Hunter filed a petition
 
 [1]
 
 in the Fourth Judicial District Court seeking to set aside and declare null the certification and proclamation of the recall election and, further, seeking preliminary and permanent injunc-tive relief. Hunter alleged that the recall petition was “severely infested” with forged signatures and rife with other illegalities; he alleged that the valid signatures did not constitute the required percentage of qualified voters. Based upon these and other alleged errors in the procedure by which the recall election was certified, Hunter asked the court to enjoin and nullify the recall election.
 

 The court set the matter for trial on October 5, 2009; early voting in the recall election had already commenced. Prior to the hearing, defendants Jindal, Dardenne, and Medaries filed an exception of per-emption. The defendants urged that Hunter’s petition was not timely filed according to La. R.S. 18:1405(F), and thus his right of action was extinguished.
 

 Hunter opposed the exception, arguing that he had one year to bring the action pursuant to La. C.C. art. 3492. He further argued that the delay for filing an action under La. R.S. 18:1405(F) should commence only when the plaintiff knew or should have known of the allegedly fraudulent acts to be challenged. Hunter asserted that the date he learned of the irregularities was September 25, 2009.
 

 Hunter also filed a supplemental opposition in which he asserted that the procedures set out in the Election Code did not provide a litigant with Insufficient notice and so were violative of the Due Process Clause and Equal Protection Clause of the state and federal constitutions. In conjunction with this claim, Hunter filed a supplemental petition challenging the constitutionality of La. R.S. 18:1405(F). Finally, Hunter filed a motion for summary judgment asking the court to “[reject] the demands for a recall election and the allegations against him as a matter of law.”
 

 Trial commenced on the morning of October 5, 2009. Hunter filed a motion to exclude the governor’s proclamation on the grounds that it contained an erroneous statement of law; the court denied this before addressing the exception of per-emption. The court heard testimony from Ms. Medaries concerning the certification of the recall petition, the receipt of the Governor’s proclamation, and her actions with references to those documents. The court also heard testimony from Bill Hodge, the Clerk of the Ouachita Parish District Court, concerning his receipt of the proclamation from the Secretary of State. Apart from other witnesses not
 
 *596
 
 relevant to the instant exception, most of the rest of the trial consisted of the argument of the attorneys concerning the exception and the constitutionality of the notice elements in the Election Code. The court then took the matter under advisement.
 

 The next day, court reconvened for the judge’s ruling. The court opted to sustain the defendant’s exception of peremption, finding that the delay for the Mayor to challenge the proclamation declaring a recall election was 15 days from the issuance of the proclamation and that the defendant’s petition challenging the pre-election procedures was untimely. The court |4further decided that there was no fraud exception to the 15-day delay and that the delay and attendant notice requirements passed constitutional muster. On October 6, 2009, at 3:40 p.m., the court signed a judgment dismissing the Mayor’s lawsuit; the Mayor filed a motion for appeal that same day. The district court granted the motion for appeal, and the record lodged in this court on October 9, 2009, at 10:28 a.m.
 

 On appeal, Mayor Hunter raises five assignments of error:
 

 1. The Trial Court erred as a matter of both fact and law in denying Appellant’s request for a temporary restraining order and / or the issuance of a preliminary injunction.
 

 2. The Trial Court erred in granting the Appellee’s Peremptory Exception of Peremption.
 

 3. The Trial Court erred in law in finding La. R.S. 18:1405(F) constitutional.
 

 4. The Trial Court erred as a matter of both fact and law in granting the excep-tors’ peremptory exception of peremption on the grounds stated by exceptors and ignored the fraudulent actions that contributed to the certification of the Recall Petition and the subsequent signing of the Proclamation by the Governor.
 

 5.The Trial Court erred as a matter of both fact and law in not finding the noncompliance of the Governor as it relates to the signing of the Proclamation, which is the subject of this suit, and failing to comply with statutory guidelines of substance and procedure.
 

 Thus the issues presented by this appeal concern the application and constitutionality of La. R.S. 18:1405(F) and any attendant notice requirements. That statute provides:
 

 F. An action contesting the certification of a recall petition shall be instituted not later than 4:30 p.m. of the fifteenth day | ¿after the governor has issued the proclamation ordering the recall election or not later than 4:30 p.m. of the fifteenth day after the last day for the governor to call the election if no recall election is called.
 

 The delay created by this statute is a peremptive period, not a prescriptive period.
 
 [2]
 
 See La. C.C. art. 3458. As the court explained in the early case of
 
 Guillory v. Avoyelles Ry. Co.,
 
 104 La. 11, 28 So. 899 (1900):
 

 When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires
 
 *597
 
 the cause of action no longer exists; it is lost.
 

 Given such a specific and narrow legislative directive as La. R.S. 18:1405(F), there is no authority for the judicial inclusion of the doctrine of
 
 contra non valentem,
 
 and at any rate, exceptions to prescription such as
 
 contra non valentem
 
 are not applicable to peremptive periods. See La. C.C. 3461 and, e.g.,
 
 Borel v. Young,
 
 07-0419 (La.11/27/07), 989 So.2d 42,
 
 on reh’g
 
 (07/01/08).
 

 The party raising the exception of prescription, or, in this case, peremption, ordinarily bears the burden of proof at the trial of the peremptory exception.
 
 Rando v. Anco Insulations, Inc.,
 
 2008-1163 (La.5/22/09), 16 So.3d 1065;
 
 Spott v. Otis Elevator Co.,
 
 601 So.2d 1355 (La. 1992). However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed.
 
 Id.
 
 Peremptive statutes are strictly construed against per-emption and in favor of the claim. Of the possible constructions, the one | (ithat maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted.
 
 Rando, supra.
 

 The ordinary rules of civil procedure allow the taking of evidence from both sides on an exception of peremption filed prior to trial. La. C.C.P. art. 931. When evidence is adduced on the trial of an exception, the trial court’s findings of fact based on that evidence are reviewed under the manifest error standard of review.
 
 McKinley v. Scott,
 
 44,414 (La. App.2d Cir.07/15/09), 17 So.3d 81. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Rando, supra.
 

 The appellant argues that La. R.S. 18:1405(F) must yield to the general prescriptive rule, La. C.C. art. 3492, which provides:
 

 Delictual actions are subject to a libera-tive prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
 

 Hunter urges that the two citizens who initiated the recall petition committed fraud or ill practices in the process of obtaining signatures and thus wrongfully obtained the Governor’s proclamation ordering the recall election. As further authority for the application of the general rule, Hunter cites La. R.S. 18:1414, which provides:
 

 Any procedural matter not specifically provided for in this Code shall be governed by the Code of Civil Procedure.
 

 |7The appellant also cites
 
 Hunter v. Tensas Nursing Home,
 
 32,217 (La.App.2d Cir.10/27/99), 743 So.2d 839,
 
 writ denied,
 
 99-3334 (La.2/4/00), 754 So.2d 228, as authority for the proposition that doubt in the application of prescriptive statutes should be resolved in favor of giving a litigant his day in court.
 

 However, in the interpretation of statutes, the specific controls the general.
 
 Corbello v. Iowa Production,
 
 2002-0826 (La.2/25/03), 850 So.2d 686. La. R.S. 18:1300.17 provides:
 

 Nothing contained in this Chapter shall be construed to deny to any public officer recalled, or whose recall is sought, the right to contest the recall, or any proceedings in relation thereto, in any court of competent jurisdiction, for fraud or other illegality. The procedural pro
 
 *598
 
 visions of Chapter 9, Part I, of this Code shall be applicable to such actions.
 

 This article mandates that the specific procedural provisions of Chapter 9, Part I of the Election Code be applied to actions contesting recall proceedings. La. R.S. 18:1405(F) is among those procedural provisions in Chapter 9, Part I of the Election Code. Thus the specific provision, and not La. C.C. art. 3492, controls the delay for filing a challenge to a recall election.
 

 Hunter next argues that even if La. R.S. 18:1405(F) applies, the peremptive period established therein should commence only when a party knows or should know that fraud was involved in the process leading to the issuance of the Governor’s proclamation ordering a recall election.
 

 As the opponent challenging the recall proclamation, the official has the burden of proving a defect in the proceedings. Because the recall election is a harsh remedy, the provisions which govern the recall process Lmust be strictly construed.
 
 Young v. Sanders,
 
 38,412 (La. App.2d Cir.4/7/04), 870 So.2d 1126,
 
 unit denied,
 
 2004-1137 (La.7/2/04), 877 So.2d 146. This court observed in
 
 Young:
 

 [T]he legislature has provided the means by which a public officer subject to recall may challenge the recall on the basis of fraud or other illegality.
 

 Under the provisions of La. R.S. 18:1300.3(0, a copy of the recall petition, once certified, shall be retained in the office of the registrar of voters in each parish affected by the petition and shall be a public record. Furthermore, under the provisions of La. R.S. 18:1300.17, nothing in the statutes on recall elections shall be construed to deny any public officer recalled, or whose recall is sought, the right to contest the recall or any related proceedings in a court of competent jurisdiction for fraud or other illegality. Thus, a public officer whose recall is sought may review a copy of the recall petition and contest its certification. As provided in La. R.S. 18:1405(F), an action contesting certification of a recall petition shall be instituted within 15 days after the governor has issued a proclamation ordering the recall election, or if no recall election is called, within 15 days after the last day for the governor to call the election. Accordingly, the established election procedures provide the public officer whose recall is sought with the opportunity to challenge the names on the recall petition when there is suspicion about the validity of the signatures.
 

 As this court explained, nothing in the statutes shall be construed to deny the public officer whose recall is sought the right to contest the recall proceedings for fraud or illegality, but the legislature has specified that such actions must be brought within 15 days after the governor issues the proclamation ordering the recall election. Thus the public official has the right to contest the calling of the recall election, but the right must be timely exercised.
 

 Although the appellant argues that the applicable delay should not commence until such time as a party knows or should know facts that show 19the commission of fraud or ill practices, the statute clearly specifies that the delay for filing expires “not later than 4:30 p.m. of the fifteenth day after the governor has issued the proclamation ordering the recall election.” This provision reflects the legislative intent that such challenges be brought quickly; it contains no limitation or exception for the discovery of fraud or ill practice. The period commences when the governor issues the proclamation. La. R.S. 18:1300.7 provides, in part:
 

 
 *599
 
 B. Immediately after the issuance of the proclamation, the governor shall publish the proclamation in the official journal of each parish in which the election is to be held. Within twenty-four hours after issuing the proclamation, the governor shall send a copy of the petition and proclamation, by registered or certified mail, to the clerk of the district court for each parish in which the election is to be held.... A copy of the petition and proclamation also shall be sent to the secretary of state. Within twenty-four hours after he receives the copies, the secretary of state shall notify all other election officials having any duty to perform in connection with a recall election, including the parish board of election supervisors for the parish or parishes in which the election is held.
 

 As described in this rule, “issuance” occurs prior to the publication of the proclamation; i.e., “issuance” is accomplished upon the signing of the proclamation by the governor.
 
 [3]
 
 Thus, the period for filing an action challenging the proclamation and recall election expired 15 days after the issuance of the proclamation. Appellant had the burden of proving that his action, filed after the expiration of this delay, was timely.
 
 Rando, supra; Spott, supra.
 

 | mThe appellant cites
 
 Page v. Modere,
 
 472 So.2d 595 (La.App. 5th Cir.1985), for the proposition that an action to enjoin a recall election may be brought at the time the irregularity is discovered, regardless of the 15-day limitation of La. R.S. 18:1405. However,
 
 Page
 
 relied on a former version of La. R.S. 18:1300.17 which did not explicitly refer to the special procedural provisions in the election law, like La. R.S. 18:1405(F), that the current version, enacted in 1986, explicitly includes.
 
 Page
 
 simply did not address the application of La. R.S. 18:1405(F).
 

 We perceive no manifest error in the trial court’s findings regarding the relevant dates of the issuance of the proclamation and the filing of this lawsuit. Accordingly, the trial court correctly decided that the plaintiffs action is barred by peremption.
 

 Finally, the plaintiff urges that the notice and delay provisions applicable to his challenge are unconstitutional. He argues that the law does not afford him sufficient time to investigate the recall process before the delay for filing a challenge elapses.
 

 Notice of the issuance of a recall proclamation is provided for in La. R.S. 18:1300.7, quoted
 
 supra.
 
 By this provision, the elected official and the public are notified by publication of the recall proclamation in the official journal of the parish where the election is to be held. Notice by publication underscores the fact that the interests of the voters are the paramount consideration in these matters. In the instant case, the evidence adduced at the hearing shows that the appellant had actual notice of the transmission of the completed recall petition to the Governor on June 23, 2009, when the |, Registrar of Voters provided the Mayor with a copy of the petition. Moreover, the appellant failed to show any defect in the notice procedure in this case, such as a defect in publication per La. R.S. 18:1300.7, that would affect his ability to timely pursue this action. This is not a case where the Mayor showed no notice to the official publication, Registrar and Clerk of Court. In fact, the evidence shows that the Regis
 
 *600
 
 trar and Clerk of Court received the document well within the 15-day period.
 

 For many reasons in the public interest, election contests must be decided quickly. See, e.g., Justice Lemmon’s concurrence in the denial of rehearing in
 
 Nicholson v. Grisaffe,
 
 438 So.2d 550 (La.1983). Likewise, the need for the finality of elections is of a very high priority.
 
 Small v. Desselle,
 
 520 So.2d 1167 (La.App. 3rd Cir. 1987). Given the strong public policy reasons underlying the short delays in election matters, the appellant has not demonstrated that the notice or delay periods involved are violative of his due process or equal protection rights. For the above-assigned reasons, the judgment of the district court dismissing this action is affirmed at appellant’s cost. The appellant’s motion, made in open court, to strike an attachment to the appellee’s brief is denied; however, in deciding this case, this court considered only those matters included in the record or those of which this court is entitled to take judicial notice.
 

 AFFIRMED; MOTION TO STRIKE DENIED.
 

 [1]
 

 . Named as defendants were Governor Bobby Jindal, Secretary of State Jay Dardenne, Ouachita Parish Registrar of Voters Christa Medaries, along with Barbara Brooks and Lavenia McKinley, the voters who created the recall petition.
 

 [2]
 

 . Compare, e.g.,
 
 Evans v. West,
 
 357 So.2d 916 (La.App. 2d Cir. 1978), concerning La. R.S. 18:1405(A).
 

 [3]
 

 . We note that La. C.E. art. 202(B)(1)(a) allows a court to take judicial notice of the proclamations of the governor; the Secretary of State is the official keeper of those proclamations. La. Const. Art. 4, § 7.